Thank you. May it please the court, your honor, Van Arvanites, Evangelo Arvanites, on behalf of Chad Travis Milton, who, and I appear, and I'm from the Federal Defenders of Montana in Billings, Montana. The issue here is whether the court erred in adjusting by four levels Mr. Milton's sentence based upon sentencing guideline 2K2.1B6B. As the court is aware, that holds that if a defendant possesses or uses a firearm in connection with another felony, then the enhancement applies. As the court is aware, that there was a split in the circuits prior to an amendment in 2006, where the Fifth Circuit tried to define in connection with, by using the definition in the drug table, 2D1.1B1, which is simply possessing the weapon was enough for the enhancement. The Ninth Circuit in Rooten decided to follow the Tenth Circuit, which has the definition, used the definition of in connection with based upon 924C language in relation to. And then, of course, the commission, as I stated earlier, the commission itself amended 2K2.1B6 and added application note 14, which adds, which distinguishes between felon possession with drug traffickers versus other felonies, including the felony that we have in the first case. And in the present case with Mr. Milton, simple possession of user quantities. So counsel, I have a lot of sympathy for your position here. There was very little in the way of drugs. The gun was hidden. This is a big enhancement. But it strikes me that the government has a very strong argument that the district court made the appropriate factual findings that there was a gun that was easily loaded. He was rummaging around for it. There was a lot of ammunition in the car and a fact finding that this was in connection with this apparent felony offense. So I need you to focus for me, at least, on why you believe the district court abused its discretion in making these factual findings. Thank you, Your Honor. Those are excellent questions. Where I focus on is accessibility, for one, which is the main factor with regard to whether a person is emboldened, which you see in the language in the cases Rootin, Valenzuela, Swenson, and Regans. Accessibility is a key part of that. This case is very much like the case that the lower court had reversed against it a few years ago, United States v. Pinnocks. Accessibility in Rootin, in Valenzuela, and the other cases from the sister circuit, the 8th, the gun was loaded. It was accessible. It was in a car. It was between a console and a seat. It was right underneath the seat as the court- But counsel, looking at page 21 of the transcript, so I find that the firearm and the ammunition were easily accessible to Mr. Milton and that they had the potential to facilitate his drug possession, given that they were in the car with him and he appeared to be rummaging around in the area where the firearm was found. I don't have any quarrel that the court could have gone a different way, but why isn't this- Why is this different? Is that what you said? I mean, why isn't that sufficient to uphold the four-level enhancement? Sure. It is insufficient because the gun, Mr. Milton purposely disembodied or separated, rendering the gun useless. And by taking the clip out and hiding the gun, which was so difficult that initially the court- the officer had seen him rummaging underneath the dashboard. And in fact, it took two sweeps around the car and a different officer with a thinner body to squeeze in. If the court looks at the government's brief, I appreciate the government putting in this picture on page seven. It is a very small area. It is a very small area. But counsel, at page 21 again, and I find also that the magazine and the loose ammunition were easily accessible to Mr. Milton. The gun wasn't loaded, but it doesn't take any time at all to load a magazine into the firearm and it can be done in a short period of time. So how can we get around those factual findings? How can we find that those factual findings were clearly erroneous? Well, because the only way that he could have had access to the gun is he would have had to stop the car, get out, do exactly what he did initially by rummaging underneath and hiding it underneath the dashboard. He would have had to stop the car, just like in Penix, where the gun was inaccessible, it was in the trunk. He would have had to stop the car, get out of the car, rummage through, find the gun underneath the dashboard, pull it out, put the clip in, and then load a bullet inside the chamber. That takes an incredible amount of time that I would say is clearly distinguishable from simply having a loaded firearm right next to you. But, Counsel, that still sounds like a challenge to the finding that the gun was accessible, which is a finding we have to review very deferentially. I thought your argument, at least in part, was that even if we accept the finding of accessibility, simply having a gun accessible when all you're doing is possessing individual use quantities of drugs, that that by itself is not enough to find, to determine that it's dissipating the offense. Is that right? Yes, yes. That is under the fortress theory, the emboldening argument. So if I can, I will go to the emboldening argument as well. And in that context, you have a usable amount of drugs. In United States v. Shields, you have a situation, for example, where Shields said a consumer quantity, it doesn't matter if it's in public or private, there's no emboldening because the quantity, the money that it costs for a user quantity is, what, maybe 50 or 60 bucks. He had a quarter gram of meth, a little more than a quarter gram of heroin. This was a coincidence, which is what United States v. Shields gets into, is there has to be a reason, there has to be a mess between the gun and the drugs. And that is why, in this case, it is simply, he is a drug addict, so he would have had the drugs regardless of the gun. Now, the gun happened to be in the car, he disembodied it. Mr. Evans, this is Judge Pearson. Sorry to interrupt you, but I worry I won't get this question in if I don't. You brought up Shields, and it's important that you help me to understand what I see as a distinction between that case and your client. In Shields, the defendant there claims the gun for personal protection. I don't see that in the record before me, that there was a non-nefarious, albeit still illegal for a felon to have a gun. But I don't see that your client offered a non-nefarious reason for having the gun assembled, meaning loaded or unloaded. What am I to make of that? Well, I think that I agree that in Shields, they made the distinction between protecting himself and protecting the drugs. And I would only say that, no, he did not make a distinction at all in this case. I would simply say that, based upon his actions, that he created a non-nefarious situation. He de-escalated the situation by essentially rendering the weapon useless and inaccessible. But that goes back to my first point. I will note that he was arrested or stopped heading out on the ramp on I-90, as the court is aware. And so it is assumed that he was heading out of town. His wife was in another car with camping gear. And so there is certainly, we didn't put on the record as to why his wife was in the other car, because his wife was also on supervision. We couldn't do that, but we did not put forth a reason that is correct. All right. Thank you. Thank you, counsel. Now, Mr. McCarthy, I believe it is your turn. Thank you, Your Honor. May it please the court, Brendan McCarthy on behalf of the United States. Just starting on the accessibility issue that the court discussed. I don't think the court can get around the factual findings that the district court made. I think that the district court's findings were based on the testimony that she heard from the officer. She credited the officer's testimony that he saw the defendant rummaging around the area where the firearm was later found. And, you know, this court can only overturn those findings if the district court's findings were illogical or implausible. Mr. Arvanetti seems to want to take a certain point of time when the search was conducted and saying that it was rendered useless at that time. But I don't think that is the time frame that the court should look at. The district court clearly found that the defendant knew that the gun was there when officers were outside. Counsel, at page 16 of your brief, you indicated that the district court actually made a finding that the gun emboldened the possession. That's what the brief says. But can you show me where in the transcript the court actually made that finding? Because I wasn't able to find any place in the transcript where the district court actually said this emboldened the possession as opposed to it had the potential. Yes, it should say that it had the potential to embolden, if I could correct that. Well, isn't that isn't that a big difference? Because what the district court said is sort of in the abstract in talking about the Eighth Circuit case, the firearm may embolden the defendant's conduct. And here there was no finding that this firearm did embolden this defendant's conduct. Isn't that pretty close to a necessary finding to uphold the four level enhancement? No, Your Honor, because the note says facilitate or potential potential to facilitate. So that's that's in the sentencing guidelines. And that's it uses the word potential. And that word should be given. It's basically ordinary common sense meaning, which means, you know, courts can. And the government doesn't have to show evidence that, you know, there was actual facilitation. But the court can, in its own discretion, kind of infer potentiality from the facts. Counsel, if I'm sorry. No, no. Please go ahead, Judge. If we accept your position, I mean, does that mean that basically any time someone is found with a readily accessible firearm and they're possessing drugs, the application of this enhancement would be appropriate? No, that's not our position, Your Honor. Why not? Because it doesn't seem like we really have anything more than that here. Well, in this case, I would say that there is. I think the court should basically have a common sense type test. Look at the types of drugs here. You have methamphetamine, heroin, hydromorphone. That's much more dangerous and addictive than than the marijuana and shields. But what does that have to do with whether the gun had anything to do with it? How does that bear on the question of whether the gun had a relationship to the simple possession of those drugs? Well, and, you know, the court, the Swanson case and the Regan's case basically say if someone's going out in public, that's different than being in, you know, in your residence. And here the court should also look at the fact that there's all these other items that were found. There's multiple spoons, there's syringes, there's the scale with residue on it. But everybody was very clear, the testifying officer, the judge, that this was not a selling situation. This was not a distribution situation. These were very small quantities. This was a user. So I'd like to hear more of your answer to Judge Miller's question. There is a gun here, but very small quantities. Absolutely no question, according to the findings, that this wasn't a distributor, but was a user. So what is there here that would indicate that if we went with you on this, that that any gun anywhere wouldn't justify the four level enhancement? What what is the distinguishing factor here? Yeah, again, the distinction, it's it's not just a factor. Well, the one factor would be that he's out in public and that's what courts have found. I mean, that's in Swanson and Regans. And those cases are much more factually similar to this case. And so, you know, you have to look at what the defendant has around him. And, you know, if he's out using these drugs and he has all these other items with him, he may want to prevent someone from stealing his drugs. He has this residue on the scale. He may want to make sure he's getting the right amount. And the defendant has a criminal history here, too. Counsel, the the idea that he wants to prevent somebody from stealing them makes sense. You know, it makes a lot of sense in the trafficking situation and maybe in some possession situations where where the amount is such that it would be worth stealing. But but these amounts are, I mean, I guess the is the value of these drugs in the record. Well, the amount it's the amount is, but I guess the monetary value, I think you would agree, is pretty small. Right. So why should we infer certainly less than the car he was driving or if he had a phone, it's probably worth less than that. So so why would he and why should we infer that the gun was to stop somebody from stealing this small amount of drugs that wasn't really worth very much? I mean, I think common sense. He's out in public doing I mean, he's out in public with methamphetamine, heroin. And, you know, there's an indicia that he may be sharing it with others. And that's something dangerous, something something that ordinarily someone wouldn't do, as opposed to the Shields case with marijuana. I mean, the law has changed so much on that, that it's someone wouldn't need a gun for protection. And to your honor's your first point, if we just looked at, you know, street value and quantity, then you're really just going to merge the drug, the possession into the to the trafficking, because we're never going to be able to prove possession. Then if the courts are going to say it's not enough of a street value. But it's in the it's in the enhancement that, you know, the other felony offense can be possession. We have to show that it emboldened it. You know, and I think, you know, having the gun here in this case and going out in public with all these items and with all these different types of drugs made it easier for this defendant to to kind of, you know, take part in that activity. Just just to be clear, the pills weren't part of the felony. Right. It was just the meth and the heroin. That's my understanding. I mean, I don't because I'm looking I'm looking at page five of the presentence report where they were. They upped this by the four and they talk about the methamphetamine and the heroin. So I don't think the pills are part of the fell off the other felony offense calculus unless I'm missing something here. I think that's correct. But so I don't think and I don't think there's anything that's saying that he had the ability to have these pills. And I would just like to add to Judge Pearson's point that the defendant never put any type of other reasoning on the record, any other explanation as to why he had this firearm. And I don't think, you know, the circumstances here, there was really no other innocent explanation. There's there's nothing about needing it for protection or for target practice or anything like that. Mr. McCarthy, Judge Pearson, again, I didn't I want to make sure I didn't misunderstood your answer to Judge Miller's question regarding the value of a user quantity of drugs. You're not telling this panel, are you, that a drug user would not protect his stash by use of a firearm if he had to, are you? No, I think and that's I think a drug user may in some circumstances, if certainly someone's out in public with these substances may want to protect the drugs that he has on him. If there's no further questions and I see my time. I have no further questions. Counsel, I think you used your time. But if you'd like a minute for rebuttal, I would be happy to put that on the clock. I think I think what the court is asking, those are very important questions. I think it's irrelevant as far as whether it's out in public or in the home, as United States versus Shields states, as far as the emboldening context. And that's all I have to say. Thank you. All right. Thank you very much. I think we thank counsel for their helpful arguments. This case will be submitted.
judges: Pearson, Bennett, Miller